5 F.3d 536
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Nganga FLORENT, Petitioner,
v.
FEDERAL AVIATION ADMINISTRATION; National Transportation
Safety Board, Respondents.
 No. 93-70160.
 United States Court of Appeals, Ninth Circuit.
 Submitted Sept. 1, 1993.*
Decided Sept. 13, 1993.
 
 On Petition for Review of a Decision of the National Transportation Safety Board, FAA No. SE-11217.
 NTSB
 PETITION DENIED.
 Before: FLETCHER, POOLE, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Nganga Florent petitions pro se for review of the National Transportation Safety Board's ("NTSB") order upholding a 120-day suspension of Florent's commercial pilot's certificate. We have jurisdiction pursuant to 49 U.S.C.App. Sec. 1486(a). We deny the petition for review.
 
 
 3
 Our review of the NTSB's decision is narrow; we will affirm unless the decision is " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' " Janka v. NTSB, 925 F.2d 1147, 1149 (9th Cir.1991) (quoting 5 U.S.C. Sec. 706(2)(A)). "Findings of fact made by the [NTSB] are conclusive when supported by substantial evidence in the record.... Purely legal questions are reviewed de novo." Id. (citation omitted).
 
 
 4
 * This case arose from three separate incidents involving aircraft piloted by Florent. The first concerned Florent's alleged unauthorized flight into the Terminal Control Area ("TCA") in San Francisco, California. The second concerned Florent's alleged unauthorized taxiing at the Hayward terminal in Hayward, California. The third concerned Florent's alleged unauthorized flight through the Fresno, California Airport Radar Service Area ("ARSA").
 
 
 5
 The Federal Aviation Administration ("FAA") found that Florent violated the following Federal Aviation Regulations ("FAR"): FAR 91.5 (requiring pilot in command, before a flight, to become familiar with all available information concerning that flight); FAR 91.9 (operating aircraft in careless manner so as to endanger life or property of another); FAR 91.87(b) (operating aircraft within TCA without first establishing two-way communications with tower); FAR 91.87(h) (taxiing aircraft without first obtaining clearance); FAR 91.88(c) (operating aircraft within ARSA without first establishing two-way communications); FAR 91.90(a)(1) (operating aircraft within TCA in violation of regulations).[1] The FAA suspended Florent's pilot's certificate for 120 days. The administrative law judge ("ALJ") upheld the FAA's action.
 
 
 6
 Florent appealed pro se to the NTSB and raised two narrow issues. First, Florent contended that the ALJ erroneously excluded his testimony regarding a conversation he had with a Mr. Mortenson after the Fresno incident. With regard to this incident, the FAA submitted as an exhibit a flight progress strip containing a handwritten notation indicating that Florent had been flying at an altitude that was within the Fresno ARSA. Mr. Mark Lambie, one of the air traffic controllers who had monitored Florent's flight, testified that he had made the notation. Florent wanted to testify that Mortenson had told Florent that he, not Lambie, had made the notation. The ALJ sustained the FAA's objection to this testimony on the ground it was hearsay. The NTSB found that the ALJ erred because hearsay evidence is admissible in NTSB proceedings but that the error was harmless because there was other testimony that Florent had been flying within the Fresno ARSA.
 
 
 7
 Florent also contended that the 120-day suspension was too harsh a penalty because he did not endanger other persons or aircraft as a result of the Fresno and Hayward incidents. The ALJ found that Florent had violated all the FARs as charged except one; the ALJ determined that Florent did not violate FAR 91.9 as a result of the Hayward incident because Florent had not created even a potential for endangerment.[2] On appeal, the NTSB recognized the ALJ's finding, but nevertheless determined that the Hayward incident had created a potential for endangerment. The NTSB also noted that in the San Francisco incident Florent had endangered two aircraft, including a commercial passenger airliner. The NTSB therefore found that a 120-day suspension was not inconsistent with precedent and was reasonable under the circumstances.
 
 II
 
 8
 In his petition, Florent again contends that exclusion of his testimony regarding his conversation with Mortenson was error. This contention lacks merit.
 
 
 9
 The NTSB correctly determined that hearsay evidence is generally admissible in administrative proceedings and that the ALJ erred by excluding on that basis Florent's testimony. See Calhoun v. Bailar, 626 F.2d 145, 148 (9th Cir.1980), cert. denied, 452 U.S. 906 (1981); Administrator v. Howell, 1 N.T.S.B. 943, 944 & n. 10 (1970). The NTSB also correctly determined, however, that the ALJ's error was harmless. The two air traffic controllers who monitored Florent's flight during the Fresno incident testified that Florent had been flying at an altitude within the Fresno ARSA, and both testified that controller Lambie had made the notation on the flight progress strip. On this record, we conclude that even if the ALJ had admitted Florent's testimony, substantial evidence supports the finding that Florent was in violation of the FARs during the Fresno incident. Thus, the NTSB did not err by finding that the ALJ's error was harmless. See Janka, 925 F.2d at 1152.[3]
 
 
 10
 Florent also contends that the 120-day suspension is too harsh a penalty and that the NTSB should have imposed either a civil penalty or remedial training instead. This contention lacks merit.
 
 
 11
 The Secretary of Transportation ("Secretary"), upon determining that "safety in air commerce or air transportation and the public interest requires, ... may issue an order amending, modifying, suspending, or revoking" an aviation certificate. 49 U.S.C.App. Sec. 1429(a); Go Leasing, Inc. v. NTSB, 800 F.2d 1514, 1517 (9th Cir.1986). The Federal Aviation Act also provides for civil penalties, see 49 U.S.C.App. Sec. 1471(a)(1), but those provisions do not affect the Secretary's discretion to employ certificate action, Go Leasing, Inc., 800 F.2d at 1518. "[T]he choice of [administrative] sanction [is] not to be overturned unless the Court of Appeals might find it 'unwarranted in law or ... without justification in fact.' " Butz v. Glover Livestock Comm'n Co., 411 U.S. 182, 185-86 (1973) (quoting American Power & Light Co. v. SEC, 329 U.S. 90, 112-13 (1946)); Essery v. NTSB, 857 F.2d 1286, 1291 (9th Cir.1988).
 
 
 12
 In determining whether the NTSB's choice of sanction was appropriate, we bear in mind the nature of Florent's violations. See, e.g., Essery, 857 F.2d at 1291. Most of them involve actions he took without obtaining proper authorization or clearance. We are particularly concerned with the fact that Florent's actions in the San Francisco incident created a hazard for a commercial passenger liner. A 120-day suspension under these circumstances is consistent with suspensions we have found appropriate in past cases. See, e.g., Essery, 857 F.2d at 1287-90 (violations of FAR 91.79(c) (flying too low over congested area) and FAR 91.9); Reid v. Engen, 765 F.2d 1457, 1460 (9th Cir.1985) (violations of FAR 91.29(a) (flying unworthy aircraft) and FAR 91.165 (failing to keep proper records)); Cobb v. NTSB, 572 F.2d 202, 203 (9th Cir.1977) (per curiam) (same as in Essery ). We therefore conclude that the NTSB's imposition of a 120-day suspension is both warranted by the law and justified by the facts. See Butz, 411 U.S. at 185-86.[4]
 
 
 13
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 These regulations are found at 14 C.F.R. Secs. 91.5, .9, .87(b) & (h), .88(c), & .90(a)(1) (1989)
 
 
 [2]
 FAR 91.9 provides that "[n]o person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." This court has held that even though no actual injury results, "potential endangerment is sufficient to find reckless operation." Ferguson v. NTSB, 678 F.2d 821, 829 (9th Cir.1982)
 
 
 [3]
 Aside from the hearsay issue, it does not appear that Florent raised any issues before the NTSB challenging the ALJ's findings that he violated the FARs. To the extent he appears to raise such issues now, we conclude that substantial evidence supports the ALJ's findings
 
 
 [4]
 Florent argues that suspension will prevent him from pursuing his only means of livelihood. Florent apparently did not raise this issue before the NTSB. We note, however, that the ALJ considered this factor in upholding the suspension of Florent's certificate. We see no reason to give that factor any further consideration. See Winslow v. NTSB, 885 F.2d 615, 617 n. 2 (9th Cir.1989)
 As to Florent's argument that suspension will not make him a better pilot and that he should have been assigned remedial training instead, we note that suspension imposed as a disciplinary measure may also serve a safety purpose as a deterrent and an example to others. See Go Leasing, Inc., 800 F.2d at 1519.
 Finally, Florent appears to argue for the first time that the choice of sanction was racially discriminatory. As we stated above, substantial evidence supports the finding that Florent violated the FARs and the choice of sanction. Nothing in the record even remotely suggests that the sanction was chosen because of Florent's race.